UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARCO ALVAREZ OSORIO,

          Petitioner,          Case No. 1:25-cv-1525

v.                                    Hon. Hala Y. Jarbou

KEVIN RAYCRAFT et al.,

          Respondents.
_____/

**OPINION**

Petitioner initiated this action on November 21, 2025, by filing a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) Petitioner is a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, declare that Respondents' application of 8 U.S.C. § 1225(b)(2) to Petitioner violates the Immigration and Nationality Act (INA) and is contrary to 8 U.S.C. § 1226(a) and the implementing regulations, declare that Petitioner's continued detention without an individualized bond hearing violates the Fifth Amendment, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Petitioner's immediate release or ordering Respondents to promptly schedule a bond hearing for Petitioner's removal proceedings, and award attorneys' fees and costs for this action.[1]

---

[1] In addition to the above-listed requested relief, Petitioner also requested, *inter alia*, that the Court "[o]rder Respondents to produce forthwith Petitioner's A-file and custody records (including any custody determinations, Form I-286, and any documents relied upon to deny bond jurisdiction)." (Pet., ECF No. 1, PageID.23.) The Court concludes that the requested materials are not necessary

(*Id.*, PageID.21–23.)[2] For the following reasons, the Court will conditionally grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.     Factual Background

Petitioner is a native and citizen of Mexico. (Notice to Appear (NTA), ECF No. 1-1, PageID.26.) Petitioner entered the United States in 2005 (Pet., ECF No. 1, PageID.8) without being "admitted or paroled after inspection by an Immigration Officer." (NTA, ECF No. 1-1, PageID.26.) Petitioner has resided in the United States since that time, and since 2014, Petitioner has resided in Comstock Park, Michigan, with his partner and four United States citizen children. (Pet., ECF No. 1, PageID.8.)

On October 17, 2025, ICE arrested Petitioner "as he was leaving his home in Comstock Park, Michigan." (*Id.*) At that time, ICE issued Petitioner a Form I-862, NTA, charging Petitioner with inadmissibility under §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the INA because Petitioner is an immigrant "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General[, and] . . . who, at the time of application for admission, is not in possession of a valid unexpired [immigration or travel document]." (NTA, ECF No. 1-1, PageID.26, 29.) Petitioner is scheduled for a master hearing in the Detroit Immigration Court on January 15, 2026. (Notice In-Person Hearing, ECF No. 4-2, PageID.157.)

---

to resolve the legal questions presented in the present § 2241 petition. Rules 6(a), 7, Rules Governing Section 2254 Cases.

[2] In an order entered on November 25, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on December 1, 2025, (ECF No. 4), and Petitioner filed his reply on December 4, 2025, (ECF No. 5).

## II. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III. Exhaustion

Respondents argue that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not requested a bond hearing before the immigration court and, therefore, has not exhausted his administrative remedies. (Resp., ECF No. 4, PageID.127–128.) Respondents further argue that Petitioner should request a bond hearing and, if necessary, appeal any unfavorable decision to the Board of Immigration Appeals (BIA). (*Id.*, PageID.128.)

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). "Courts have described an implied requirement to raise issues with an agency as a 'judge-made,' 'prudential,' or 'common law' duty to exhaust," *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citations omitted), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention," *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D.

3

Mich. Sep. 9, 2025) (citing *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)), and "[t]he Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484[ (1971)]; *McKart v. United States*, 395 U.S. 185, 193–95[ (1969)),]" to determine whether prudential exhaustion should be required. *Id.* Under this three-factor test,

> Courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination is principally a legal question of statutory interpretation and does not require the record that would be developed if the Court required Petitioner to exhaust his administrative remedies. Moreover, this Court is not bound by, and is not required to give deference to, any agency interpretation of a statute. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (discussing that

4

"courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous").

Second, Petitioner's constitutional challenge to his detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner, which are not premised on "correctable procedural errors," generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (discussing that "an alien's due process challenge generally does not require exhaustion," but noting that an "alien must raise correctable procedural errors," such as a claim "that the BIA denied him due process by relying upon an 'incomplete and inaccurate' transcript to review his case," "to the BIA"). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that the Government has clearly set forth its belief that § 1225(b)(1)(A) applies to all noncitizens who have resided within the United States prior to their arrest and detention. Notably, the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 229 (BIA 2025). It is simply unlikely that any administrative review by the BIA of that denial would lead the Government to change its position, and thereby obviate the need for judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4 (citations omitted). A court may choose to rule upon the merits of the issues presented when the

5

"legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, given the Government's position and the BIA's recent decision in *Yajure Hurtado*, requiring Petitioner to exhaust his administrative remedies and request a bond hearing would likely be futile. Moreover, it is clear that delay would result in hardship to Petitioner. There is no evidence in the record as to how long Petitioner would have to wait for a bond hearing to be scheduled. Petitioner's request would likely be denied given the BIA's recent decision in *Yajure Hurtado*. Then, Petitioner would have the opportunity to appeal any unfavorable decision to the BIA. Appeals of bond denials "typically take six months or more to be resolved at the BIA." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (citation omitted). It is "unmistakable that . . . depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## IV.    Merits Discussion

### A.    Statutory Basis for Petitioner's Detention

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). (*See* Pet., ECF No. 1, PageID.10–11.) Respondents, however, contend that Petitioner meets every

6

element for detention under § 1225(b)(2), and that "even if the text of § 1225(b)(2) were ambiguous, its structure and history support the agency's interpretation of the statute." (Resp., ECF No. 4, PageID.128.)

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). And, § 1226(a) states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole . . . .

*Id.* § 1226(a). The plain language of these provisions indicates that both § 1225 and § 1226 govern the detention of noncitizens pending removal proceedings. The difference is that § 1225 provides for mandatory detention and § 1226 allows for the release of the noncitizen on conditional parole or bond. As explained below, the Court concludes that § 1226(a), not § 1225(b)(2)(A), governs Petitioner's detention.

"A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see Corley v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (noting that courts "must give effect to the clear meaning of statutes as written" (citation omitted)). "When interpreting a statute, the

7

inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted). But, "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). And, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024).

As set forth above, § 1225(b)(2)(A) provides for the detention "of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The INA defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States" *See id.* § 1225(a)(1). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See id.* § 1101(a)(13). The word "entry," is not defined in the INA, s*ee generally id.* § 1101, but the dictionary definition of "entry" is "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited Dec. 5, 2025). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre*, 14 I&N Dec. 467, 468 (BIA 1973)). Further, the phrase "seeking admission" is also undefined in the statute. The dictionary definition of "seeking" is "ask[ing] for," *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited Dec. 5, 2025), and the word

8

"seeking" "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. July 24, 2025) (citations omitted).

Respondents argue that any noncitizen who has not been lawfully admitted, regardless of whether they are already present and residing in the United States, is "an alien seeking admission" subject to mandatory detention under § 1225. However, that reading of § 1225 would render the qualifier "seeking admission" in the statute entirely unnecessary. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted). Given Congress's decision to use different terms in § 1225—i.e., "applicant for admission" and "alien seeking admission"—the Court will presume that Congress intended these phrases to mean different things. *See Pulsifer v. United States*, 144 S. Ct. 718, 735 (2024) ("In a given statute, . . . different terms usually have different meanings." (citation omitted)).

Here, Petitioner is not actively seeking to lawfully cross into the territorial limits of the United States because he already *entered* the United States twenty years ago, in 2005. (*See* Pet., ECF No. 1, PageID.8.) As the United States District Court for the Southern District of New York explained when addressing this issue:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [the petitioner], because he has already been residing in the United States for several years.

9

*Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025); *see Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("[S]eeking admission' . . . implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

In comparison to § 1225, "[s]ection 1226(a) is less specific." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sep. 9, 2025). Section 1226 provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a). Looking at both § 1225 and § 1226, even if the statutory text appears unambiguous when viewed in isolation, "courts are to interpret the words of a statute in context." *Hibbs*, 542 U.S. at 101 (citation omitted); *see Yates v. United States*, 574 U.S. 528, 537 (2015) ("The plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." (alterations in original) (citations omitted)).

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. A title such as this "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring). Additionally, Congress's decision to include the word "arriving," as well as the decision to include references to methods of physical arrival, such as "stowaways" and "crewmen," in § 1225 evidences an intent to address noncitizens arriving "at a border or port of entry." *Pizarro Reyes*, 2025 WL 2609425, at *5; 8 U.S.C. § 1225(a)(2)(3). In contrast, § 1226 is titled: "Apprehension and detention of aliens." 8 U.S.C. § 1226. "That Congress separated removal of arriving aliens[, as set forth in § 1225,] from its more general section for

10

'Apprehension and detention of aliens,' [as set forth in] § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing *Dubin v. United States*, 143 S. Ct. 1557, 1567–68 (2023)).

Further, in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the United States Supreme Court explained that § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. The United States Supreme Court stated that, in contrast, "[s]ection 1226 generally governs the process of arresting and detaining . . . aliens [already living within the United States] pending their removal." *Id.* at 288. Thus, in *Jennings*, the United States Supreme Court differentiated between noncitizens initially arriving to the United States who are governed by § 1225, and noncitizens already present in the country who are governed by § 1226. *See id.* at 288–89.

The broader language of the statute, as recently amended, further supports the Court's conclusion. Recently, Congress passed the Laken Riley Act, which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), *and* who have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). If the Court accepted Respondents' interpretation of §§ 1225 and 1226, then § 1226(c)(1)(E) would be rendered entirely superfluous. *See Hibbs*, 542 U.S. at 101 ("[W]e follow the cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it. . . . [And,] [t]he rule against superfluities complements the principle that courts are to interpret the words of a statute in context." (internal quotation marks omitted) (citation omitted)).

Accordingly, for the above-discussed reasons, the Court concludes that § 1226(a), not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested.[3]

### B.  Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. (*See* Pet., ECF No. 1, PageID.20–21.) Respondents counter Petitioner's arguments by stating that Petitioner has received due process because "Petitioner received notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, can request bond at that time, and has the right to appeal the denial of any request for bond, and has been detained by ICE for less than two months." (Resp., ECF No. 4, PageID.144–45.)

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025). Thus, noncitizens, such as Petitioner, are entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *3 (6th Cir. Jan. 18. 2023).

---

[3] The Court has recently reached the same conclusion in a number of other habeas corpus actions filed by immigration detainees. *See, e.g.*, *Salgado Mendoza v. Noem*, No. 1:25-cv-1252, 2025 WL 3077589, at *6 (W.D. Mich. Nov. 4, 2025); *Ruiz Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *5–6 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, at *5 (W.D. Mich. Oct. 31, 2025); *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255, at *5 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 1:25-cv-1271, 2025 WL 3017200, at *5 (W.D. Mich. Oct. 29, 2025); *Cervantes Rodriguez v. Noem*, No. 1:25-cv-1196, 2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at *9 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 1:25-cv-1131, 2025 WL 2992222, at *6 (W.D. Mich. Oct. 24, 2025); *Sanchez Alvarez v. Noem*, No. 1:25-cv-1090, 2025 WL 2942648, at *6 (W.D. Mich. Oct. 17, 2025). This Court is far from the first federal district court to reach this conclusion.

Respondents contend that Petitioner is entitled to no further process at this time. (*See* Resp. ECF No. 4, PageID.145.) Respondents' assertion, however, is contradicted by their own supporting evidence—there is nothing in the record before the Court to suggest that a bond hearing has been scheduled. Respondents claim further "that statutory provisions denying bond during administrative removal proceedings do not violate the [D]ue [P]rocess [C]lause." (*Id.*, PageID.144 (citation omitted).)

If the Court agreed with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A), then the Government's due process argument might carry more weight. However, as set forth above, this Court does not agree with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A). Instead, Petitioner's detention is governed by § 1226(a). Section 1226(a) clearly sets forth a discretionary framework for detention or release of an alien subject to that provision. The statute allows the Attorney General to continue to detain the arrested alien, or release the alien on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," or "conditional parole." *See* 8 U.S.C. § 1226(a)(1)–(2). This discretionary framework "requires a bond hearing to make an individualized custody determination." *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Sixth Circuit held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) ("If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*."). Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation

of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. There is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). The Court may also consider Petitioner's conditions of confinement, that is, "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Here, Petitioner, through counsel, represents that he has a partner and four United States citizen children. (Pet., ECF No. 1, PageID.8.) There can be no doubt that he is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 784 F. Supp. 3d at 1187.

The second *Mathews* factor also weighs in Petitioner's favor. An individualized bond hearing ensures that an immigration judge can assess whether Petitioner poses a flight risk or a danger to the community, reducing the risk that Petitioner will suffer an "erroneous deprivation" of his rights. *See Lopez-Campos*, 2025 WL 2496379, at *9.

Finally, under the third *Mathews* factor, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025) (citation omitted). However, Respondents have not

14

established a significant interest in "detaining someone who [could convince] a neutral adjudicator, following a hearing and assessment of the evidence, that his ongoing detention is not warranted." *See id.* Furthermore, Respondents have not established that an individualized hearing would impose significant "administrative or financial costs" in this case—"[t]o the contrary," Respondents' position "requires the government to continue funding and overseeing [Petitioner's] detention." *See id.*

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.[4]

## V.  Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. (Resp., ECF No. 4, PageID.148.)

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494–95 (1973). Thus,

> [r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

---

[4] Because the Court will conditionally grant Petitioner's § 2241 petition for the reasons set forth herein, the Court does not, and need not, address other claims raised in Petitioner's § 2241 petition.

The Sixth Circuit has concluded "that a detained alien generally must designate his immediate custodian—the [Immigration and Naturalization Service (INS), the predecessor to the present immigration-related agencies,] District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named the Director of the Detroit Field Office of ICE, the United States Secretary of Homeland Security, and the United States Department of Homeland Security as Respondents. (Pet., ECF No. 1, PageID.1, 4.)

In *Roman v. Ashcroft*, the Sixth Circuit stated that although it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, . . . [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court explained:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas*[ *v. Olsen*], 194 F. Supp. 2d [368,] 374 [(D.N.J. 2002)]. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft*, 216 F. Supp. 2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); . . . . In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte*[ *v. Comm'r*], [No. 00 CIV. 2412 (RWS),] 2000 WL 1617999, at *8 [(S.D.N.Y. Oct. 30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

In light of the foregoing, to ensure that Respondents maintain authority to enforce this Court's conditional grant of habeas relief—i.e., the Court's directive that Petitioner receive a bond hearing or, alternatively, be released—in the event that Petitioner is transferred out of the Western

District of Michigan, the Court will not dismiss Secretary Noem as a Respondent to these proceedings. The Court will, however, dismiss the United States Department of Homeland Security as a Respondent.

### Conclusion

For the reasons discussed above, the Court will enter a judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was granted, the conditions of the bond, or if bond was denied, the reasons for the denial. Further, the Court will dismiss the United States Department of Homeland Security as a Respondent.

Dated: December 5, 2025                    /s/ Hala Y. Jarbou
                                           HALA Y. JARBOU
                                           CHIEF UNITED STATES DISTRICT JUDGE